Nat H. Hentel, J.
In this jury trial, opening statements of counsel were recorded at the request of codefendant Suarez. There was no claim in plaintiff’s opening statement that he intended to prove negligence on the part of defendant Suarez. Further, there was no statement of intention to prove any permanency of alleged injuries, nor did plaintiff claim he would prove any specific diagnosis of an injury suffered as a result of the alleged automobile accident. Plaintiff merely stated that he was seeking money damages for alleged pain and suffering following the accident. At the close of the *420 opening statements, defendant Suarez moved to dismiss the complaint as against him which motion was granted in the absence of opposition.
The remaining defendant Wright, in effect, admitted his liability in his opening statement and advised the jury he intended to prove that plaintiff was not entitled to bring this "no-fault” suit under the provisions of section 670 et seq. of the Insurance Law (Comprehensive Automobile Insurance Reparations Act).
Plaintiff’s testimony showed him to be a passenger seated in the right front seat of defendant Suarez’ vehicle, when it was struck in the rear by defendant Wright’s vehicle while the host vehicle was at a standstill for a traffic light. He described the impact as "medium” moving the host vehicle, a 1969 Cadillac, about five feet forward after impact. The other vehicle was a lighter automobile. Plaintiff, using a seat belt at the time, stated that after impact his body "moved back and forward” in the car. He makes no claim that any portion of his body including his head came into contact with any portion of the interior of the host car. He felt no pain immediately after the accident, but later that same day, he felt pains in his upper back and neck area, and felt "a little stiff.”
On November 25, 1975, the day following the accident, plaintiff visited a physician with respect to his alleged pains and headaches. The testimony and the certified bill of his physician establishes 15 separate visits to his treating physician, the last of which occurred on February 7, 1976. Treatment on each occasion was the same: "He [the physician] gave me pills — two different kinds — and heat treatment.” Inasmuch as the physician was not called to testify, there is no history of the accident in the record other than plaintiff’s testimony; nor is there any diagnosis of injuries allegedly sustained as a result of the accident, the pills and the reason for giving them are not described; nor is the necessity for the heat treatments or where they were applied to the body of plaintiff described.
Plaintiff further testified that his physician sent him to a radiologist for X rays sometime in December of 1975, about two weeks after the accident. Plaintiff claimed continuing headaches but admitted that he had had headaches prior to the accident on various occasions, but that following the accident he had headaches "more often.”
Plaintiff’s radiologist was called to testify and he stated he *421 saw plaintiff on December 9, 1975, and later on February 23, 1976, more than two weeks after the treating physician had discharged plaintiff as his patient on February 7, 1976. The radiologist admitted he took no history, and stated that "all I do is take X-rays and interpret same.” Further, the radiologist did "not recall the circumstances as to how plaintiff came to him in the first place.” The radiologist had no present recollection as to any complaints of pain given to him by the patient, and inasmuch as he was not the treating physician, he would not have been able to testify as to subjective pains, current or past, in any event.
On December 9, 1975, the radiologist merely took 11 X rays of plaintiff including three of the head, four of the neck, and four of the back. One of the alleged abnormalities the radiologist discovered from the head X rays was an area of "diminished bone density in the left occipital bone.” The radiologist admitted he could not make an exact diagnosis concerning this abnormality on December 9, 1975, on February 23, 1976, or even as of the date of his testimony on May 18, 1977. He further admitted he could not testify that the trauma of the automobile accident, such as described to him in a hypothetical question, caused the diminshed bone density. He also testified as to other physical findings from the X rays which he, as an expert, stated, within a reasonable degree of medical certainty, were caused by the trauma of this accident. However, he did not testify that any of such alleged injuries connected to the automobile accident were of a permanent nature. Plaintiff’s bill of particulars does not allege any head injuries but merely alleges headaches as having been sustained and caused by the accident.
On February 23, 1976, the radiologist had the plaintiff return for follow-up X rays of the head and neck. There was no testimony by him that he took this second set of our head X rays and two neck X rays at the request of the treating physician. He stated that the four additional head X rays "showed no significant change over the previous three head X-rays taken on December 9, 1975.” He offered no reason for taking the additional four X rays of the head, but stated that the two additional neck X rays were taken by him merely "to determine whether any complications from traumatic arthritis” had occurred in the interim in the area of the cervical spine. Traumatic arthritis was not indicated in the first set of X rays.
*422 The radiologist’s bill for the first set of X rays on December 9, 1975, was $180, of which sum $55 was "the fair and reasonable charge for the first set of head X-rays.” The bill for the second set of X rays on February 23, 1976, was $90, of which sum $55 was attributable to the four head X rays. Again, the radiologist admitted that he could make "no diagnosis of the decreased bone density of the skull”, or as to what caused it, and that it could have been there long before the accident. The certified bill of the treating physician admitted into evidence was for $235. Thus, the treating physician’s bill and the total of the two X-ray bills comes to $505 — $5 above the "no-fault” threshold.
After plaintiff rested his case, defendant Wright moved to strike all of the testimony referring to the X rays of the plaintiff’s skull taken on February 23, 1976; to strike the evidence of the alleged fair and reasonable and customary value of the X rays of the plaintiff’s skull taken on February 23, 1976; and, if such motions were granted, to dismiss plaintiff’s complaint, as a matter of law, under section 673 of the Insurance Law, for failure to prove a "serious injury”, or to establish medical treatment in exces of $500.
The court clearly is of the opinion that plaintiff failed to establish a prima facie case, as a matter of law, in order to qualify for benefits for conscious pain and suffering. He failed to establish a "serious injury” under section 671 (subd 4, par [a]) of the Insurance Law. There was no fracture; there was no permanent loss of the use of a body organ, member, function, or system; there was no dismemberment.
Plaintiff’s expert witness could not relate the diminished bone density of the skull as being causally connected to the automobile accident, and thus, it was not an injury sustained as a result of this accident. If it was not connected causally to this accident, then the radiologist’s follow-up skull X rays of February 23, 1976, were not within the orbit of section 671 (subd 4, par [b]) as "reasonable and customary charges for * * * X-ray[s] * * * necessarily performed as a result of the injury” (emphasis supplied), allegedly suffered herein by virtue of the defendant Wright’s negligence. Thus, the court granted defendant Wright’s motions, and struck all of the testimony relating to the diminished bone density of plaintiff’s skull, as well as the testimony of the value of the follow-up X rays for the skull on February 23, 1976, amounting to $55. The question then as to the reasonable and customary charges *423 for the remainder of the X rays which is usually referrable to a jury, becomes moot, since the total of the medical and X-ray expenses allegedly established in plaintiff’s case only now amounts to $450.
Accordingly, the complaint is dismissed as a matter of law against remaining defendant Wright. Jury discharged.